**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 25-12774

Non-Argument Calendar

————————————————

SHANNON BAZEMORE,

*Plaintiff-Appellant,*

*versus*

INTERNATIONAL LONGSHOREMEN'S ASSOCIATION,
ILA LOCAL 1475,

*Defendant-Appellee.*

————————————————

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 4:23-cv-00372-RSB-CLR

————————————————

Before JILL PRYOR, BRANCH, and LAGOA, Circuit Judges.

PER CURIAM:

Shannon Bazemore, appearing pro se, appeals the district court's dismissal of her complaint against the International Longshoremen's Association Local 1475 ("Local 1475") alleging that Local 1475 discriminated against her based on her race, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.  On appeal, Bazemore first argues that the district court erred in dismissing her employment discrimination complaint for failure to exhaust her administrative remedies because her charge to the Equal Employment Opportunity Commission ("EEOC") was timely.  Second, she argues that the district court erred in dismissing her complaint for failure to state a claim because she adequately alleged facts of racial discrimination and a hostile work environment.  For the reasons stated below, we affirm.

## I.      FACTUAL AND PROCEDURAL BACKGROUND[1]

On December 28, 2023, Bazemore filed a complaint against Local 1475 under Title VII and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, alleging that Local 1475 engaged in disparate and unlawful employment practices based on race against her and 21 additional African American members of Local 1475.  Her complaint alleged that since at least October 1, 2020, Local 1475

---

[1] Because the procedural posture of this case involves a Rule 12(b)(6) motion, we must accept the allegations of plaintiff's complaint as true. *See Marsh v. Butler County*, 268 F.3d 1014, 1023 (11th Cir. 2001) (en banc).  The facts set forth in this section of the opinion therefore are taken from the complaint, which at this procedural stage we must accept as true and construe in the light most favorable to the plaintiff.

engaged in unlawful conduct and unfair employment practices, including a segregated work list, disadvantageously changing seniority rules, and implementing waivers to assure the white members of Local 1475's bargaining unit that Bazemore and her fellow African American members would not take on "AA" seniority status.

Around September 2020, she was hired by Local 1475 and was trained to perform job functions as a clerk and checker ("CNC"). A member must work at least 700 hours during a calendar year (October 1st to September 30th) to acquire seniority status. During her first contract year, October 2020 to September 2021, she obtained at least 700 hours and later was classified as a "ZZZ," rather than an AA seniority status, which she alleged stemmed from her being hired from a segregated "emergency street list" or "extra list."

She filed a racial discrimination grievance related to her not obtaining AA status despite her meeting the hour requirements for obtaining that status. On March 3, 2022, she, along with another female African American member, Nedra Cook, participated in a video conference with Local 1475 regarding the grievance. Sometime after the video conference, it was communicated to Bazemore that although she and her fellow ZZZ members worked at least 700 hours in contract year 2020 to 2021, they were not going to be awarded AA seniority status, but would be awarded "HH" seniority status.

She alleged that in her grievance to Local 1475, she attached a group text message sent by Jimmy Gunby, a white bargaining

unit member, to other white bargaining unit members that stated the following:

> [H]ello everyone this is Jimmy Gunby, This text is for information only please don't respond to this group text. List 5 will not go into effect until October 1st, which means all the zzz's that make their hours will be in our category . . . The total for our category is sitting at 26 without counting the ZZZ"s that will make it. By my estimation we are looking at 15-20 of them making it if we don't block them a little better than we have been . . . If you can please pick up at least 20 to 30 hours (2-3) shifts a week or more if you can. This will make a big difference for us next year if we can limit how many get in with us. Once again I did not send this for everyone to respond I'm just giving the information that I know and asking if you can block a few shifts a week it will make the difference in maybe 5-10 of the ZZZs not making it. [. . .]

She alleged that this text message showed a conspiracy to hinder her and her fellow 21 African American members from advancing to AA seniority status, which she alleged was a discriminatory act. During the 2020-2021 contract year, the ZZZ member group consisted of 112 members: 90 white members and 22 African American members. She alleged that this text from Gunby was only concerned with the 22 African American ZZZ members. Her complaint further alleged that in order to assure white members of

the bargaining unit that her and her fellow African American members would not advance to AA status, Local 1475 maliciously implemented a Memorandum of Understanding ("MOU") that stated that "any individuals dispatched by the Clerk's Dispatcher who have earned a minimum of 700 hours or more in the 2020-2021 year will be placed on the Clerk's Seniority List into seniority classification group AA. This group **does not** include any Clerk and Checker personnel on the Clerk's 'Emergency List.'"

Bazemore's complaint further alleged that Local 1475 created an unconstitutional waiver to have a certain group of members, including herself, sign under duress that stated that they must sign the waiver or leave their job.  She alleged that paragraph five of the waiver stated that "[a]ny hours worked before the creation of any future list(s) being established WILL NOT QUALIFY AS CREDITED HOURS toward SENIORITY under the CBA."  She also alleged that after Gunby and a predominately white group of members were awarded AA seniority status, Local 1475 abrogated the waiver and awarded her the less desirable seniority classification of "HH1."

Her complaint further alleged that on September 1, 2022, she filed a charge with the EEOC based on the unfair and discriminatory treatment she experienced on March 3, 2022, when Gunby and a predominately white group of members were awarded AA seniority status.  She alleged that on or about June 20, 2023, Local 1475 had unfairly allowed 29 unqualified members that had previously been added to Bazemore's status group to remain in her

group. After she was placed in the HH1 seniority group, she amended her EEOC charge, and on September 1, 2023, she again amended her EEOC charge seeking leave to join the 21 other African American members from her status group.

On September 29, 2023, the EEOC dismissed her charge. Her complaint alleged that, based on the above, Local 1475 turned a blind eye to prohibited actions of its members, condoned actions of discrimination in its workplace, and discriminated against her and her 21 additional African American members to hinder their advancement to AA seniority status. Bazemore also attached the EEOC's determination of charge and notice of right to sue, which was issued on September 29, 2023.

Local 1475 moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Bazemore's complaint was time-barred for failing to exhaust her administrative remedies and that her complaint failed to state a claim. Along with its motion to dismiss, Local 1475 filed a motion requesting judicial notice of several documents that were referenced in Bazemore's complaint or were related to Bazemore's complaint and were part of the public record. These documents included the ILA Local 1475 Savannah Clerks and Checkers Seniority Plan ("Exhibit A"), the October 1, 2021 MOU ("Exhibit B"), the June 1, 2023 Addendum to the October 1, 2021 MOU ("Exhibit C"), Bazemore's August 13, 2022 Charge of Discrimination to the EEOC ("Exhibit D"), and a copy of the National Labor Relations Board's ("NLRB") Denial Letter

that denied an unfair labor practice charge related to the MOU and the Addendum ("Exhibit E").

As relevant here, the October 1, 2021, MOU stated that new seniority classifications, starting with group AA, would be added following the conclusion of contract year 2020-2021. It stated that all current workers from "Extra Lists 1, 2, 3, and 4" who earned a minimum of 700 hours in 2020-2021 would be placed in seniority class AA, except for workers on the "Emergency List." The MOU also stated that workers on the "Emergency List" who accumulated 700 hours during contract year 2020-2021 would be placed on a newly created "Extra List 5" and in the newly created HH seniority classification. The June 1, 2023 Addendum to the MOU stated that the HH seniority class that was created under the October 2021 MOU would be subdivided into class HH-1, which included members who were on an "emergency list" during the 2020-2021 contract year and worked at least 700 hours during the 2021-2022 contract year, and class HH-2, which included all other members who worked at least 700 hours during the 2021-2022 contract year.

Local 1475 also attached Bazemore's EEOC charge, which was digitally signed on August 13, 2022, and alleged that the earliest date of discrimination was September 2021, and the latest date was March 3, 2022. Her charge alleged that she began working for Local 1475 in November 2020 and during 2021, she completed 700 hours of work required to advance to the AA seniority class. The charge alleged that around September 2021, she and others were required to sign a waiver stating that their hours would not count

towards seniority and another member signed her waiver on her behalf. The charge alleged that she complained to Local 1475 on March 3, 2022, had a video call with the union, and afterward, Local 1475 implemented a policy that placed her and others in a less desirable seniority category. Her charge stated that she believed that she had been discriminated against because of her race.

In support of its motion, Local 1475 noted that the undated text message from Gunby was sent before October 1, 2021, because it referenced List 5 going into effect. Local 1475 also noted that Bazemore's grievance to the union was sent in an email dated February 4, 2022. Local 1475 argued that Bazemore failed to exhaust her administrative remedies with the EEOC because her 180-day lookback period from her September 1, 2022, EEOC charge would have ended on March 5, 2022, and her allegations about the October 2020 "emergency street list" and the September 2020 waiver were well outside of that period. It also argued that Bazemore's allegations about the October 1, 2021, MOU were similarly untimely and argued that she was, or should have been, aware of the seniority system and its continuing impact starting from the date of the MOU. Local 1475 also argued that Bazemore's alleged amendments to her EEOC charge were insufficient as a matter of law because neither of her amendments were verified pursuant to the EEOC's regulations, nor did Local 1475 receive notice of the amendments. It also argued that Bazemore's claim regarding the June 1, 2023, addendum that she alleged placed her in the HH1 seniority category, as well as her September 1, 2023 amendment attempting to add additional parties to her EEOC charge, would

have required her to file new verified charges and therefore were unexhausted.

The district court granted Local 1475's motion to dismiss.[2] In its order, the district court found that Bazemore failed to exhaust her administrative remedies with the EEOC because the discrete acts she challenged, namely the changes to seniority classification in the September 2021 waiver and the October 1, 2021 MOU, occurred over 180 days before she filed her charge to the EEOC on September 1, 2022. It also noted that, under the terms of the 2021 MOU, while Bazemore may not have actually received Class HH status until the completion of the 2021-2022 contract year, she was aware of the terms well before then, her challenge here was to the actual terms of the 2021 MOU, and those terms went into effect in October 2021. The district court also found that Bazemore failed to allege facts sufficient to support her claim of racial discrimination under Title VII because her complaint did not allege any facts, beyond mere conclusory allegations, that Local 1475 racially discriminated against her or African Americans in general. The district court noted that Bazemore candidly stated in her briefing that her claim of discrimination was not based solely on race, and the emergency list and the creation of the HH class were based on objective factors and also impacted white workers. The district court further found that the sole piece of evidence Bazemore alleged to

---

[2] The district court took judicial notice of the seniority plan, the October 1, 2021, MOU, the June 1, 2023 Addendum to the MOU, and Bazemore's EEOC charge.

support her racial discrimination claim was her interpretation of Gunby's text message.  The district court found that the text was not attributable to Local 1475, and that even if it was, Bazemore failed to allege anything beyond mere speculation that the message was related to race.

This timely appeal followed.

## II.    ANALYSIS

We turn first to Bazemore's argument that the district court erred in dismissing her employment discrimination complaint for failure to exhaust her administrative remedies because her charge to the EEOC was timely.  We review a district court's dismissal of a claim for failure to exhaust administrative remedies de novo. *Jimenez v. U.S. Att'y Gen.*, 146 F.4th 972, 987 (11th Cir. 2025).  Although we review a pro se complaint liberally, we need not rewrite one so that it will survive a motion to dismiss. *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014).  Additionally, a complaint need not specify in detail the precise theory giving rise to recovery, and all that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests. *Sams v. United Food & Commercial Workers Int'l Union, AFL-CIO, CLC*, 866 F.2d 1380, 1384 (11th Cir. 1989).

Before filing an action in federal court, Title VII requires that a plaintiff in a non-deferral state, such as Georgia, file an administrative charge with the EEOC within 180 days after the alleged unlawful employment action.  42 U.S.C. § 2000e-5(e)(1); *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1258 (11th Cir. 2003).  The applicable

period for filing an EEOC charge of discrimination does not begin to run until the employee receives unequivocal notice of an adverse employment decision. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 849 (11th Cir. 2000). A "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004).

Timely filing a charge of discrimination is not a jurisdictional prerequisite, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). The continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim if the "defendant's actions violate a plaintiff's rights on a repeated or ongoing basis." *Jimenez*, 146 F.4th at 992. "A plaintiff must identify more than a present harm from a past act to satisfy the continuing violation doctrine." *Id.* (quotation marks omitted). For claims based on the cumulative effect of individual acts, such as a hostile work environment claim, a claim "will not be time barred 'so long as all acts which constitute the claim are part of the same unlawful employment practice.'" *Id.* at 933 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002)).

Here, we conclude that the district court did not err in dismissing Bazemore's complaint for failure to exhaust her administrative remedies with the EEOC because it is clear from the record that the discrete acts that she alleged to have violated her rights

occurred beyond her 180-day lookback period.  We thus affirm as to this issue.

We turn now to address Bazemore's argument that the district court erred in dismissing her complaint for failure to state a claim because she adequately alleged facts of racial discrimination and a hostile work environment.  We review the grant of a motion to dismiss under Rule 12(b)(6) de novo, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff.  *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1255 (11th Cir. 2015).  To withstand a motion to dismiss under Rule 12(b)(6), a complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Title VII prohibits employers from discriminating against employees on the basis of their race.  42 U.S.C. § 2000e-2(a).  "To state a race-discrimination claim under Title VII, a complaint need only 'provide enough factual matter (taken as true) to suggest intentional race discrimination.'"  *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015).  Plaintiffs must still satisfy the plausibility standard set forth in *Twombly* and *Iqbal*.  *See id.* at 1245.

Title VII also prohibits a racially hostile work environment where "a series of separate acts . . . collectively constitute one unlawful employment practice."  *McCann v. Tillman*, 526 F.3d 1370,

1378 (11th Cir. 2008) (quoting *Morgan*, 536 U.S. at 117 ) (quotation marks omitted).  To establish a racially hostile work environment claim under Title VII, a plaintiff must show that: "(1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (quoting *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010)).

Section 1981 prohibits intentional racial discrimination. 42 U.S.C. § 1981; *Jimenez*, 146 F.4th at 988.  Section 1981 has the same requirements of proof and uses the same analytical framework as claims brought under Title VII. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1324 n. 14 (11th Cir. 2011).  Section 1981a concerns damage awards in cases of intentional employment discrimination.  42 U.S.C. § 1981a.

Here, we conclude that the district court did not err in dismissing Bazemore's complaint for failure to state a claim because the facts asserted in her complaint, taken as true, do not suggest that Local 1475 discriminated against her based on her race. *See Surtain*, 789 F.3d at 1245-46; *Jimenez*, 146 F.4th at 988.  The record shows, and Bazemore's responsive briefings asserted that the implementation of Local 1475's seniority plan through the September 2021 waiver, the October 2021 MOU, and the June 2023 Addendum

to the MOU were race-neutral and were applied to Bazemore and her fellow class members, including the 90 white class members, in the same manner.  The text message from Gunby also does not support a reasonable inference that Gunby's reference to blocking "15-20" members of the 112 members of the ZZZ class from advancing into the next seniority class referred to Bazemore or the other 21 African Americans in the ZZZ class, because nothing in the text message mentions race, nor could reasonably be inferred as referencing race.

We also conclude that the district court did not err in dismissing Bazemore's complaint for failure to state a hostile work environment claim because the facts asserted in her complaint, taken as true, were not sufficient to support the claim.  Bazemore's complaint fails to allege facts sufficient to support a hostile work environment claim because the single text message from Gunby was not pervasive nor can it be reasonably inferred as referencing race.  Bazemore also did not allege how it altered the terms and conditions of her employment and created a hostile or abusive working environment.  *See Jones*, 683 F.3d at 1292; *see, e.g., Campbell*, 760 F.3d at 1168-69; *Sams*, 866 F.2d at 1384.  We thus also affirm as to this issue.

### III.    CONCLUSION

For the reasons discussed above, we affirm the district court's dismissal of Bazemore's complaint.

**AFFIRMED.**